**Robert C. GLASS, Petitioner-Appellant,**

v.

**Louis B. HEYD, Criminal Sheriff of the Parish of Orleans, Respondent-Appellee.**

**No. 71-1415.**

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1972.

Rehearing Denied March 6, 1972.

George M. Strickler, Jr., Lolis E. Elie, New Orleans, La., Richard B. Sobol, Washington, D. C., for petitioner-appellant.

Numa V. Bertel, Jr., Asst. Dist. Atty., Parish of Orleans, Maurice R. Franks, New Orleans, La., Jim Garrison, Dist. Atty., Parish of Orleans, for respondent-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

In this habeas corpus proceeding filed under 28 U.S.C. §§ 2241, 2242 and 2254 petitioner, Robert S. Glass, an attorney at law, challenges two convictions for criminal contempt in a Louisiana State Court, alleging that they are invalid as violative of the First, Fifth and Sixth Amendments of the United States Constitution. The convictions followed refusals of petitioner to answer questions put to him in State Court and before the grand jury in connection with an investigation into alleged serious criminal acts which petitioner is said to have witnessed. Glass declined to answer the questions asked, and claimed the attorney-client privilege. The District Judge denied habeas corpus, assigning written reasons, and Glass has appealed. We affirm on the basis of the District Court opinion which is appended.

---

APPENDIX

United States District Court
Eastern District of Louisiana
New Orleans Division

Robert S. Glass

versus

Miscellaneous
No. 1798
Section F

Louis B. Heyd, Sheriff of the
Parish of Orleans

The petitioner, Robert S. Glass, seeks relief under the provisions of 28 USC §§ 2241, 2242 and 2254, alleging that his criminal contempt convictions in the Criminal District Court, Parish of Orleans, State of Louisiana, September 24, 1970 and October 8, 1970, were in violation of his constitutional rights, specifically, under the First, Fifth and Sixth Amendments of the United States Constitution. Having considered the petition, the briefs and arguments of counsel:

It is ordered that the petition, filed under the provisions of 28 USC §§ 2241, 2242 and 2254, be and the same is hereby denied.

REASONS

I

Petitioner's conviction for contempt on September 24, 1970, occurred during a motion to quash a subpoena issued to petitioner by the Grand Jury for the Parish of Orleans, State of Louisiana. The motion was filed by petitioner and heard in Section G of the Criminal Dis-

trict Court, Parish of Orleans, Judge Frank J. Shea presiding. Petitioner was seeking to quash his subpoena on the basis of a claimed attorney-client relationship with an organization, and the members thereof, whose alleged criminal activity the Grand Jury was probing.

During cross-examination of petitioner, he was asked to name the persons who belonged to the organization for whom he was then claiming the attorney-client privilege. Petitioner disputes that this is the question which his refusal to answer caused his contempt conviction. Instead, he contends that the Court sought to have him identify, not the persons with whom he claimed an attorney-client relationship, but other persons known to him as members of the organization and with whom he did not claim an attorney-client relationship. A review of the record of the proceedings on petitioner's motion to quash clearly indicates that petitioner's contention has no basis in fact.

The Court summarized the question twice before actually holding petitioner in contempt:

> "I want you to be sure you understand my question so we don't have confusion here or the Federal Court or the Supreme Court or wherever we are going to go, that any individual that you have a personal contact with as an attorney-client relationship, even though it involves your representation of a group, *I want to know the names of any individual that you personally spoke to in your attorney-client relationship?*
>
> \* \* \* \* \* \*
>
> "If you gave this person legal advice or spoke to them as an attorney to a client, even though you were representing the group and this individual

as part of a group *and you had an attorney-client relationship with him* in the representation of that group, I want to know who he is." [1] (emphasis supplied)

Clearly, a practicing attorney such as Mr. Glass could not have misunderstood such a vivid explanation of the focal question.

Petitioner was then ordered to answer the question and, on refusing, was held in contempt of court by Judge Shea, who sentenced him to pay a fine of $100 or to serve 24 hours in the Orleans Parish Prison. Petitioner sought review of the judgment of contempt in the Supreme Court of Louisiana, which Court refused the writ application on October 2, 1970.

Petitioner cites the cases of N.A. A.C.P. v. State of Alabama ex rel. Patterson,[2] Bates v. City of Little Rock,[3] and Gibson v. Florida Legislative Investigating Committee[4] in support of his contention that the State must have a "compelling interest" to require the disclosure of names of members of controversial or unpopular organizations. The Court takes no issue with petitioner's interpretation of those cases, but only with their applicability to his case. Indeed, the Court finds that the State does have a "compelling interest" in, or need to know, the names of the members of an unpopular organization, where the members whose names are sought are suspected of specific criminal misconduct.

Petitioner further disputes the State's "compelling interest" in his answer to the disputed question, since the proceeding in which this question was asked, and the contempt finding made, was petitioner's own motion to quash. The Court, however, finds that, whereas the hearing on petitioner's motion to

---

1. In Re: The Matter of Grand Jury Subpoena to Robert Glass, Section G, Criminal District Court, Parish of Orleans, State of Louisiana, "Testimony and Notes of Evidence taken before the HONORABLE FRANK J. SHEA, Judge presiding, on Thursday, September 24, 1970." pp. 45–6.

2. 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

3. 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960).

4. 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963).

quash had its very roots in the Grand Jury probe, the hearing on that motion has sufficient nexus to the Grand Jury proceeding to make the petitioner's refusal to answer the question (as found by the Court) at the hearing on the motion, tantamount to, or no less than, a refusal to answer at the Grand Jury proceeding. Therefore, petitioner's request to set aside the Criminal District Court's first order to answer and judgment of contempt, rendered on September 24, 1970 by Judge Frank J. Shea, is hereby denied.

## II

Petitioner's second conviction for contempt of Court by Judge Frank J. Shea occurred on October 8, 1970, on which date the State of Louisiana, in a Grand Jury investigation, sought information from petitioner regarding criminal acts which petitioner allegedly witnessed. The question posed to petitioner before the Grand Jury is not controverted and was:

"Now, Mr. Glass, I ask you to name all the individuals that you recognize or that you knew of or if you knew the names of those individuals who were in the headquarters during the time you were there with Mrs. Woislawski in the headquarters?,

to which he responded:

"As an attorney, I claim the attorney-client relationship that we have and take the Fifth Amendment on their behalf." [5]

Petitioner refused to answer the question and again was taken before Judge Shea. Following a hearing on the matter, Judge Shea ordered petitioner to answer the question. Petitioner again was taken before the Grand Jury, again was asked the question and, refusing to answer, was brought back before Judge Shea, who found him in contempt of the Grand Jury. Sentencing was deferred until October 13, 1970, on which date petitioner was sentenced to pay a fine of One Hundred Dollars and to be imprisoned for five days in the Orleans Parish Prison.

Review of the judgment of contempt was sought in the Supreme Court of Louisiana, which court refused the writ application on October 23, 1970.

Petitioner contends that his second contempt conviction by Judge Shea was a violation of his rights under the Fifth and Sixth Amendments of the United States Constitution.

■ Petitioner's basis for any claimed attorney-client relationship with the suspect or suspects did not arise out of the events which comprised the alleged criminal acts then being investigated by the Grand Jury but, rather, arose from past cases which were handled for such client or clients. In other words, at the time the alleged criminal acts under investigation were allegedly committed, and to which petitioner allegedly was a witness, there was not attorney-client relationship as to such acts which would preclude petitioner from testifying against his "client". A past attorney-client relationship does not, of itself, preclude an attorney from ever testifying against that former client on new and separate issues. That is axiomatic in the law governing the attorney-client relationship.[6]

That fact aside, the Court must turn to the question of whether the law would allow a suspect to employ the services of an attorney who was an alleged witness to the very criminal act for which the attorney-client relationship is sought.

The Court is persuaded by the language of the United States Court of Ap-

---

5. State of Louisiana v. Robert Glass, Section G, Criminal District Court, Parish of Orleans, State of Louisiana, "Testimony and Notes of Evidence taken before the HONORABLE FRANK J. SHEA, Judge presiding on Thursday, October 8, 1970". p. 5.

6. Wigmore on Evidence, 3d Ed. Vol. 8, p. 600, § 2311: "The mere relation of an attorney and client does not raise a presumption of confidentiality, and the circumstances are to indicate whether by implication the communication was of the sort intended to be confidential."

peals for the Fourth Circuit In Re Ryder,[7] where the appellate court affirmed the district court's order of the suspension of an attorney for knowingly taking possession of stolen money and a weapon. The Court stated:

> "Ryder's acts bear no reasonable relation to the privilege and duty to refuse to divulge a client's confidential communication. Ryder made himself an active participant in a criminal act, ostensibly wearing the mantle of the loyal advocate, but in reality serving as accessory after the fact."

Similarly, petitioner's act of making himself a witness to an alleged crime "bears no reasonable relation to the privilege" and, furthermore, precludes the inception thereof.

Of additional persuasion is the dictum expressed by Mr. Justice Cardozo in Clark v. United States [8] regarding the attorney-client privilege:

> "The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. *He must let the truth be told.*" (emphasis supplied)

Thus petitioner also "must let the truth be told", for to allow an attorney to withhold evidence of a crime committed by a former client would, likewise and most certainly, be an abuse of the privilege. Petitioner is thus precluded, by his relationship as a witness to the alleged criminal act, from continuing his attorney-client relationship with that alleged criminal.

For the foregoing reasons, petitioner's request to set aside the second conviction of criminal contempt in Criminal District Court, Parish of Orleans, State of Louisiana, rendered on October 8, 1970 by Judge Frank J. Shea, is hereby denied.

/s/ LANSING L. MITCHELL
UNITED STATES DISTRICT JUDGE

New Orleans, Louisiana
January 29, 1971

GODBOLD, Circuit Judge (specially concurring):

I concur in the result but with this additional comment concerning the contempt at the motion to suppress hearing. The inquiry into names at that hearing consumed 35 pages of the record. The two brief summarized statements made by Judge Shea and quoted in the opinion of the federal District Judge are insufficient basis on which to predicate a decision in this case. Rather than supporting the correctness of an adjudication of contempt they tend to show the contrary, containing as they seem to me to do, several alternative inquiries. They call for the names of individuals that Glass had personal contact with by reason of his attorney-client relationship with an organization; the names of all persons that Glass spoke to in his attorney-client relationship (presumably, his relationship with the organization); and the names of persons to whom Glass gave legal advice or spoke to as attorney to client in representing the group and the individual as part of the group. These ambiguities go to the heart of the elusive problem that was before the court.[1]

However, Glass is not entitled to reversal by reason of the ambiguities in what the federal District Judge regarded as a crystal clear explanation of the focal problem. What is perfectly clear from the entire hearing is that Glass considered, because he represented an organization, that he had such relationship with every member of the organization that he was entitled to invoke the attorney-client privilege with respect to

---

7. 381 F.2d 713, 714 (CA 4-1967).

8. 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933).

1. Judge Shea's difficulty in defining, and refining, the question was understandable.

Each time he appeared to get the participants precisely on target someone would present a question, or a clarification, qualification or modification, that necessitated a restatement.

every member, without regard to whether he was currently handling any particular legal matter or matters for individual members (for some individual members he was, for others he was not). The District Attorney's position was that he denied the existence of a privilege extending to every individual member, except members for whom Glass currently was serving as attorney for their individual matters, but, alternatively, if the privilege was to be claimed then Glass was required to state the names of the persons with respect to whom it was asserted. These were the positions of the parties. The position of Judge Shea was that Glass could not claim an umbrella of privilege over a number of people while at the same time declining to tell who they were.

The refusal of Glass to reveal the names was unjustified, and the finding of contempt at the motion to suppress hearing was correct.